UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JOSEPH R. CHOQUETTE          :
                             :
        v.                   :        C.A. No. 08-384A
                             :
MICHAEL J. ASTRUE,           :
Commissioner of the Social Security   :
Administration               :

## MEMORANDUM AND ORDER

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"), 42 U.S.C. § 405(g).  Plaintiff filed his Complaint on October 15, 2008 seeking to reverse the decision of the Commissioner.  On April 30, 2009, Plaintiff filed a Motion to Reverse the Decision of the Commissioner.  (Document No. 10).  On June 1, 2009, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (Document No. 11).

With the consent of the parties, this case has been referred to me for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  Based upon my review of the record and the legal memoranda filed by the parties, I find that there is not substantial evidence in the record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act.  Consequently, I order that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 11) be DENIED and Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 10) be GRANTED.

## I.   PROCEDURAL HISTORY

Plaintiff filed an application for DIB on November 7, 2006 (Tr. 91-95) alleging disability as of April 24, 2006.  Plaintiff is insured for disability benefits through December 31, 2011.  (Tr. 11, 103).  The application was denied initially (Tr. 46-48, 56-58) and on reconsideration.  (Tr. 49-55).  Plaintiff filed a request for an administrative hearing.  (Tr. 68).  On April 21, 2008, a video hearing was held before Administrative Law Judge Ronald J. Thomas (the "ALJ") at which Plaintiff, represented by counsel, a medical expert ("ME") and a vocational expert ("VE") appeared and testified.  (Tr. 21-45).

On May 15, 2008, the ALJ issued a decision finding that Plaintiff was not disabled.  (Tr. 6-20).  The Appeals Council denied Plaintiff's request for review on August 12, 2008.  (Tr. 1-5).  A timely appeal was then filed with this Court.

## II.   THE PARTIES' POSITIONS

Plaintiff argues that the ALJ's RFC findings are not supported by the record and that the ALJ's findings at Step 5 are not supported by the VE's testimony.

The Commissioner disputes Plaintiff's claims and asserts that the ALJ's RFC assessment and Step 5 finding are supported by substantial evidence.

## III.   THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health

and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d  31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980)

(remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Jackson, 99 F.3d at 1095. With a sentence six remand, the parties must return to the court after remand to file modified

-4-

findings of fact.  <u>Id.</u>  The court retains jurisdiction pending remand, and does not enter a final

judgment until after the completion of remand proceedings.  <u>Id.</u>

IV.   DISABILITY DETERMINATION

The law defines disability as the inability to do any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the

claimant unable to do her previous work, or any other substantial gainful activity which exists in the

national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

A.   Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a

treating physician unless there is good cause to do otherwise.  <u>See</u> <u>Rohrberg v. Apfel</u>, 26 F. Supp.

2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the

nature and severity of a claimant's impairments is well-supported by medically acceptable clinical

and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in

the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may

discount a treating physician's opinion or report regarding an inability to work if it is unsupported

by objective medical evidence or is wholly conclusory.  <u>See</u> <u>Keating v. Sec'y of Health and Human</u>

<u>Servs.</u>, 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them

such weight as is supported by clinical or laboratory findings and other consistent evidence of a

claimant's impairments.  <u>See</u> <u>Wheeler v. Heckler</u>, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a

treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R §  404.1527(d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's RFC (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner.  20 C.F.R. § 404.1527(e).  See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B.      Developing the Record**

The ALJ has a duty to fully and fairly develop the record.   Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists

if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.     Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D.     The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth,

if a claimant's impairments (considering her RFC, age, education and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5.  The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(I)(3), 423(a), (c).  If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E.    Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5.  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a

claimant.  Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be

met through exclusive reliance on the Medical-Vocational Guidelines (the "grids").  Seavey, 276

F.3d at 5.  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from

an exertional impairment, without significant non-exertional factors.  Id.; see also Heckler v.

Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is

appropriate in cases involving only exertional impairments, impairments which place limits on an

individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of

work at a given residual functional level or when a claimant has a non-exertional impairment that

significantly limits basic work skills.  Nguyen, 172 F.3d at 36.  In almost all of such cases, the

Commissioner's burden can be met only through the use of a vocational expert.  Heggarty, 947 F.2d

at 996.  It is only when the claimant can clearly do unlimited types of work at a given residual

functional level that it is unnecessary to call a vocational expert to establish whether the claimant

can perform work which exists in the national economy.  See Ferguson v. Schweiker, 641 F.2d 243,

248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-

exertional limitations are severe enough to preclude a wide range of employment at the given work

capacity level indicated by the exertional limitations.

### 1.    Pain

"Pain can constitute a significant non-exertional impairment."  Nguyen, 172 F.3d at 36.

Congress has determined that a claimant will not be considered disabled unless he furnishes medical

and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical

impairment which could reasonably be expected to produce the pain or symptoms alleged.  42

U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4) Treatment, other than medication, for relief of pain;
>
> (5) Functional restrictions; and
>
> (6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

### 2.    Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony requires

that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.    APPLICATION AND ANALYSIS

Plaintiff was fifty-five years old at the time of the ALJ hearing.  (Tr. 18, 91).  Plaintiff is a high school graduate and completed four years of college.  (Tr. 121).  Plaintiff has past relevant work as a warehouse supervisor from 1979 to 2006 and holds a commercial driver's license.  (Tr. 25, 123).  Plaintiff initially alleged disability due to lumbar spine and neck problems.  (Tr. 116).

On October 24, 2005, Dr. Curtis J. Mello examined Plaintiff who had a supple neck, no neurological deficits, intact sensation, a normal gait, normal motor strength and no edema in the extremities.  (Tr. 170).  Plaintiff reported a history of back problems and pain.  Id.

On October 12, 2006, Plaintiff began undergoing physical therapy at Mount Hope Physical & Aquatic Therapy for treatment of back pain.  (Tr. 172-173).  Upon exam, Plaintiff had full range of motion of the lower extremities with diminished strength, present reflexes and intact sensation; tightness in the hamstrings upon straight leg raising tests; and tightness and tenderness in the lumbar spine.  Id.  Plaintiff was diagnosed with degenerative disc disease of the lumbar spine with associated deficits and prescribed two weeks of physical therapy (Tr. 173), during which he reported

continued pain/discomfort with some relief in his pain; made slow, but steady progress; made good overall progress; had good overall results; was progressing well; was doing better with his lower back pain and made moderate improvement.  (Tr. 175-180).

On October 19, 2006, Dr. Curtis J. Mello saw Plaintiff, who complained of constant back pain.  (Tr. 182).  Upon exam, Plaintiff had a supple neck, no neurological deficits, intact sensation, a normal gait, normal motor strength and no edema in the extremities.  Id.  Doctor Mello diagnosed Plaintiff with chronic back pain which Doctor Mello described as a major problem for Plaintiff.  Id.

On January 8, 2007, Ms. Lianne M. Themuda, a licensed massage therapist, opined that, as long as Plaintiff avoided heavy lifting and excessive standing, sitting and bending, he would have a much better chance of remaining pain free.  (Tr. 196).  She indicated that she had been treating Plaintiff since 2002 and "many times" found him in "a state of unbearable pain."  Id.

On January 25, 2007, Dr. John Bernardo, a non-examining state agency physician, opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently, stand, walk and sit each for six hours, push and pull without limitation, frequently balance, stoop and kneel; occasionally stoop, crouch, crawl and climb ramps and stairs; never climb ladders, ropes and scaffolds; and tolerate extreme cold and heat, fumes, odors, dusts, gases, poor ventilation and hazards on a less than concentrated basis.  (Tr. 198-199, 201).

On May 24, 2007, Dr. Norbert Lebine reported that he had treated Plaintiff since July 28, 1993 for impairments in his lumbar and cervical spines which caused moderate to severe neck and back pain and limited him to performing sedentary work.  (Tr. 216-217).

On June 22, 2007, Dr. Randall L. Updegrove saw Plaintiff, who complained of neck and back pain.  (Tr. 218-221).  Upon exam, Plaintiff had the ability to arise from the sitting position with

no obvious discomfort, no swelling or deformity in the spine, mild tenderness in the lumbar spine, diminished range of motion of the neck and extension of the back, no atrophy in the lower extremities, full muscle strength, intact sensation, a nonantalgic gait, the ability to walk on the heels and toes, x-ray images of the cervical and lumbar spines that revealed normal findings and x-ray images of the thoracic spine that revealed degenerative changes.  Id.  Plaintiff was diagnosed with chronic back pain and probable old compression deformities.  (Tr. 221).

On August 17, 2007, Doctor Updegrove again saw Plaintiff, who complained of back pain. (Tr. 222). Upon exam, Plaintiff had pain in the back upon flexion and extension, and an intact neurological exam.  Id.  Plaintiff was diagnosed with back pain.  Id.  He had no health insurance which limited his treatment options.  Id.

On March 3, 2008, Doctor Updegrove opined that Plaintiff, in an eight-hour workday, could sit for eight hours, stand for four hours and walk for three hours; lift and carry no more than twenty pounds occasionally; use his hands for simple grasping, reaching, pushing, pulling and fine manipulation; use his legs and feet for operating foot controls; occasionally bend; never squat, kneel, or crawl and never be exposed to unprotected heights.  (Tr. 246).

On March 4, 2008, Dr. Francis R. Sparadeo performed a consultative psychological evaluation of Plaintiff (Tr. 247-250) who was alert, oriented, pleasant and cooperative, with a normal and logical thought process and a depressed mood.  (Tr. 247-252).  Doctor Sparadeo diagnosed Plaintiff with major depressive disorder, generalized anxiety disorder, and pain disorder (Tr. 250), and opined that he was unable to work.  (Tr. 249).  Doctor Sparadeo also opined that Plaintiff had no limitation in the ability to maintain personal habits and understand, remember and carry out instructions; mild limitations in the ability to respond appropriately to coworkers and relate

to other people; moderately severe limitations in the ability to respond appropriately to supervision and perform simple and repetitive tasks and severe limitations in the ability to perform daily activities, maintain interests, respond to customary work pressures and perform complex and varied tasks. (Tr. 251-252).

### A.    The ALJ's Step Five Finding is Not Supported by the Record

The ALJ decided this case adverse to Plaintiff at Step 5. The ALJ found that Plaintiff's back impairment and depression were "severe" impairments under 20 C.F.R. § 404.1520(c) but not of Listing-level severity. (Tr. 11-12). As to RFC, the ALJ determined that Plaintiff could perform a range of work at the medium exertion level limited to occasional bending, stooping, twisting, squatting, kneeling, crawling, climbing and balancing. (Tr. 13). Plaintiff was also limited by his depression to working in a supervised, low-stress environment, defined as requiring few decisions. Id. Based on this RFC and testimony from the VE, the ALJ concluded that Plaintiff was not disabled because he was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 19).

Plaintiff argues that the ALJ misquoted the VE's conclusions in his decision and also that the ALJ's questioning of the VE was imprecise and resulted in a vague and ambiguous record.

Defendant concedes that the ALJ misinterpreted the VE's testimony in his decision. In particular, the ALJ indicated that Plaintiff's RFC for medium work would allow him to perform the jobs of assembler, hand packager and inspector. Id. However, the VE identified these three representative occupations in response to a particular hypothetical incorporating a light, not medium, work capacity. (Tr. 43). When the hypothetical was changed to an RFC for medium work (as found by the ALJ), the VE's response appears to be limited to the hand packager position. Thus, the ALJ

-14-

potentially misstated the VE's opinion at Step 5 both as to the types of work and numbers of positions available.  Defendant unpersuasively contends that I should find any such mistake to be harmless error.  However, to do so, I would have to speculate as to the meaning of the VE's testimony and whether any inconsistencies would have affected the ALJ's Step 5 conclusion.  I hesitate to do so because Defendant, not Plaintiff, bears the burden of proof at Step 5.  See Wells, 267 F. Supp. 2d at 144.  Moreover, the Step 5 determination requires a finding that Plaintiff's RFC would permit him to adjust to other work existing in "significant numbers in the national economy (either in the region where you live or in several regions in the country)."   20 C.F.R. § 404.1560(c)(1).  There is simply not a clear basis in the record for that finding.

Moreover, after the VE gave his opinion as to the jobs available in response to the hypothetical incorporating a medium RFC, he asked if the same postural limitations would apply. (Tr. 44).  The ALJ responded affirmatively and the VE then stated that:

> Well, then it does, the situation makes it a little bit different in terms of many of the medium jobs are going to, like for instance, what would be janitorial cleaning are going to require someone to frequently do some postural work so in terms of that adding significant more jobs, it might not with the occasional postural restrictions.

Id.  The ALJ then concluded his questioning of the VE.  However, the VE's question about the applicability of postural limitations and the confusing response quoted above cried out for a clarifying follow-up question.  For instance, the ALJ could have simply restated the hypothetical incorporating his RFC finding and sought an unequivocal opinion from the VE to clarify the record. His failure to do so has resulted in an ambiguity in the record and legitimate confusion about the VE's actual conclusion.

### B.        The ALJ's RFC Assessment is Not Supported by Substantial Evidence

Plaintiff alternatively argues that the ALJ had no medical basis in the record for his RFC finding that Plaintiff was able to perform a range of medium work.  There is no medical opinion in the record that Plaintiff can perform medium work.  Although the ALJ is entitled to resolve conflicts in the evidence and determine the ultimate question of disability, see Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir.1981) ("the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [the Commissioner], not for the doctors or for the courts"), as a lay person he is not permitted "to interpret raw medical data in functional terms...," Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir.1999); see also Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d  427, 430 (1st Cir. 1991) ("[s]ince bare medical findings are unintelligible to a lay person in terms of residual functional capacity, the ALJ is not qualified to assess claimant's residual functional capacity based on the bare medical record."); Gordils v Sec'y of Health & Human Servs., 921 F.2d 327, 329 (1st Cir. 1990) (same).  "Rather, an explanation of claimant's functional capacity from a doctor is needed." Rivera-Torres v. Sec'y of Health & Human Servs., 837 F.2d 4, 7 (1st Cir.1988); see also Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996) ("[A]n expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person.").  However, there are exceptions.  For instance, "[w]here the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment." Manso-Pizarro, 76 F.3d at 17.  In other words, if the "evidence suggests a relatively mild physical impairment posing, to the layperson's eye, no significant exertional restrictions," then the ALJ can independently assess an RFC. Id. at 17-18. This record does not fit the exception.

On January 25, 2007, Doctor Bernardo, a state agency consultant, opined that Plaintiff was limited to a range of light work. (Ex. 5F).  Doctor Bernardo noted that Plaintiff had a history of low back pain for several years, becoming progressively more severe and had tried physical therapy, chiropractic treatment and massage therapy with no improvement.  (Tr. 198).  Doctor Bernardo rendered his light work RFC opinion despite his awareness that an October 2006 examination of Plaintiff revealed normal gait and neurological exam with good range of motion of the lumbosacral spine and no evidence of muscle atrophy.  Id.  On May 24, 2007, Doctor Labine, Plaintiff's Chiropractor, opined that Plaintiff was limited to sedentary work.  (Ex. 8F).  On March 3, 2008, Doctor Updegrove, Plaintiff's treating physician for his back condition, opined that Plaintiff was limited to light work.  (Tr. 246).  Dr. Edward Spindell, an orthopedic surgeon (Tr. 86), testified at the ALJ hearing as a medical expert.  (Tr. 33-38).  After succinctly summarizing the medical records, Doctor Spindell opined that Plaintiff's back condition did not meet a listing "from an orthopedic standpoint."  (Tr. 34-35).[1]  Doctor Spindell was not asked about Plaintiff's RFC, and did not express any RFC opinion independently or any opinion regarding the RFC opinions on file.

Plaintiff contends that Dr. Bernardo's opinion that Plaintiff was limited to light work, if accepted by the ALJ, would have supported a disability finding under the "grids."  See 20 C.F.R. Pt. 4, Subpt. P, App. 2 (Section 202.04).  He also argues that the ALJ erred by failing to evaluate that opinion or provide any reasons for rejecting it.  Defendant does not dispute that accepting Dr. Bernardo's opinion would have resulted in a disability determination applying the "grids." However, it contends that Plaintiff is "mistaken" when he asserts that the ALJ failed to evaluate Dr. Bernardo's opinion.

---

[1]  Plaintiff is not challenging the ALJ's Step 3 finding that his back impairment does not meet a Listing.

Both sides are correct to some degree.  First, Plaintiff is partially correct in that the ALJ failed to mention or evaluate Dr. Bernardo's opinion at all in his detailed five-page discussion of the record in the section of his opinion assessing Plaintiff's RFC.  (Tr. 13-18).  Second, Defendant is partially correct because the ALJ did briefly address Dr. Bernardo's opinion in another section of his decision.  (Tr. 20).

In the last paragraph of his decision, the ALJ explains why he disagreed with the substantive findings made by the Federal Reviewing Official at an earlier stage in the case.  (Tr. 19-20); (see also Tr. 53-55).  In particular, the ALJ stated that Dr. Bernardo's light-work assessment was not supported by the medical record and is inconsistent with the record as a whole because Plaintiff has never been hospitalized, he has had no surgery, his doctors have never ordered an MRI, he receives only chiropractic and massage therapy and he uses only Advil for pain.  (Tr. 20).

I find two flaws in the ALJ's analysis.  First, the factors cited by the ALJ for rejecting Dr. Bernardo's opinion (Tr. 20) were all apparent from the medical records reviewed by Dr. Bernardo and summarized in his opinion.  (Tr. 198).  Thus, Dr. Bernardo was aware of these facts when he rendered his light work opinion, and the ALJ provides no explanation for his disagreement with Dr. Bernardo on this point.  For instance, he does not indicate if his disagreement is based on subsequent medical records, evidence regarding Plaintiff's daily activities or degree of functioning, or an adverse credibility determination as to Plaintiff's own statements and testimony regarding his limitations.  Because the ALJ failed to specifically discuss Dr. Bernardo's opinion in the context of his RFC assessment, we are left to speculate.  Second, the ALJ inaccurately states that Plaintiff has received "only" chiropractic and massage therapy when the record is clear that Plaintiff also participated in conventional physical therapy.  (See, e.g., Ex. 2F).  While the ALJ legitimately looks

at the extent of Plaintiff's treatment and medication, he also fails to address the evidence in the record that Plaintiff's treatment options (including obtaining prescription drugs) was limited "on a cost basis" by his lack of health insurance.  (Tr. 30, 222).

### C. The Record is Not Sufficiently Developed Regarding Plaintiff's Unemployment Benefits Claim.[2]

In discussing Plaintiff's credibility, the ALJ concluded that his receipt of unemployment benefits is inconsistent with his allegation in this case that he is unable to work due to back pain. (Tr. 14).  The record is fairly thin on this issue.  It includes a printout purportedly showing that Plaintiff collected unemployment benefits in 2006 and early 2007. (Tr. 102).  Plaintiff did not testify at the ALJ hearing about his receipt of unemployment benefits and the circumstances, and he was not questioned on those topics by the ALJ.

In Perez v. Sec'y of H.E.W., 622 F.2d 1, 3 (1st Cir. 1980), the First Circuit Court of Appeals expressed "reservations about the significance of such evidence" but refused to overturn a denial of benefits because the receipt of unemployment benefits was not a "decisive factor" in the ALJ's decision.   It did not, however, hold that such evidence "may never be considered on the issue of disability."  Id. at 3.

In this case, Plaintiff's receipt of unemployment benefits appears to have been a material factor in the ALJ's adverse credibility determination as to Plaintiff's statements and testimony and impacted the ALJ's RFC assessment.  (Tr. 14, 17).  Plaintiff apparently left his last job in 2006 due to a back flare up.  His past work required heavy exertion which he was not able to perform.  (Tr.

---

[2] Although Plaintiff has not raised this argument, I am compelled to raise it sua sponte as it is apparent to me that the ALJ placed emphasis on this point but made no effort to adequately develop the applicable record or to research the applicable law (Rhode Island's Employment Security Act, R.I. Gen. Laws § 28-44-1, et seq.) to dissect whether there truly is a legal contradiction between collecting unemployment under these specific circumstances and Plaintiff's position that the ALJ should have assessed an RFC for light, not medium, work.

18).  Under R.I. Gen. Laws § 28-44-17, a resignation for "good cause," such as job unsuitability due

to medical issues, will not generally preclude an award of unemployment benefits.  In addition to

clearing the "good cause" hurdle, Plaintiff would also have to establish that he was "physically able

to work and available for work."  R.I. Gen. Laws § 28-44-12(a).  A claimant is required to "search

for suitable work."  Id.

The ALJ found a contradiction between Plaintiff's claimed inability to work due to back pain

and collecting unemployment, which indicates Plaintiff was able to, and available for, work.  (Tr.

14).  The ALJ's premise is incorrect.  Plaintiff's unemployment claim could simply mean that he

had to quit his heavy exertion warehouse/delivery job due to back pain but that he was  able to

perform "suitable work" as set forth in R.I. Gen. Laws § 28-44-12(a)(3).

The bottom line is that the record is not sufficiently developed to conclude that Plaintiff has

contradicted himself by receiving unemployment benefits and applying for Social Security disability

benefits.  If a more developed record showed that Plaintiff gave sworn statements to the Rhode

Island Department of Labor and Training that contradicted statements made in the course of this

case, then the ALJ's conclusion would be supported.  There is, however, no evidence in the record

of any such contradictory statements or intent by Plaintiff to mislead.  A claimant could legitimately

hold himself out as able to perform light or sedentary work for unemployment purposes, and at the

same time be entitled (due to age)[3] to disability benefits with a light or sedentary RFC under the

grids.   While  Plaintiff's  application  for  unemployment  benefits  may  well  have  contained

inconsistencies with his instant claim, the record does not contain sufficient information to reach that

---

[3]  Plaintiff was fifty-five years old at the time of the ALJ hearing which places him in the "advanced age"
category for purposes of vocational adjustment and application of the "grids."

conclusion at the present time.  Thus, the ALJ's consideration of this issue in finding Plaintiff to have contradicted himself (Tr. 14, 17) is not supported by substantial evidence.

### IV.    CONCLUSION

For the reasons stated above, I order that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 11) be DENIED and Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 10) be GRANTED.[4]  Final judgment shall enter in favor of Plaintiff remanding this matter for additional administrative proceedings consistent with this decision.


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
August 31, 2009

---

[4] Although Plaintiff has prevailed, the precedential value of this decision to other claimants is questionable. Individually, the strength of Plaintiff's arguments for reversal and remand are not overwhelming and each presented close calls on this record.  However, Plaintiff's arguments (and the issue raised sua sponte by the Court regarding unemployment benefits) when viewed collectively make a more compelling case for remand.  While the ultimate conclusion may not change, Plaintiff should receive (after his nearly thirty-year history of consistent employment) a disability determination which is based on a full and fair record and devoid of error (harmless or otherwise).